## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RETIREMENT & SECURITY PROGRAM FOR EMPLOYEES OF THE NATIONAL TELECOMMUNICATIONS COOPERATIVE ASSOCIATION AND ITS MEMBER SYSTEMS,<br><br>      Plaintiff,<br>v.<br>JEAN APPLETON and<br>JUDITH A. JOHNSON,<br><br>      Defendants. | Civil No. 08-168 (JRT/RLE)<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

William J. Egan, **OPPENHEIMER WOLFF & DONNELLY LLP**, 45 South Seventh Street, Suite 3300, Minneapolis, MN 55402; Alvaro I. Anillo, **GROOM LAW GROUP, CHARTERED**, 1701 Pennsylvania Avenue NW, Washington, D.C. 20006, for plaintiff.

Gary A. Debele, **WALLING BERG & DEBELE, PA**, 121 South Eighth Street, Suite 1100, Minneapolis, MN 55402, for defendant Appleton.

Thomas P. Malone, Susan E. Tegt, Karen K. Kurth, and Susan E. Sheely, **BARNA GUZY & STEFFEN, LTD.**, 200 Coon Rapids Boulevard, Suite 400, Minneapolis, MN 55433-5894, for defendant Johnson.

This interpleader action brought pursuant to 28 U.S.C. § 1335 concerns the conflicting claims of defendant Judith Johnson ("Judith") and defendant Jean Appleton ("Appleton") to pension benefits owed to Donald O. Johnson ("Donald"). Both defendants have filed motions for summary judgment. For the reasons given below, the

Court denies both motions without prejudice, and directs the parties to submit renewed motions addressing the relevance of ERISA's anti-alienation provision.

## BACKGROUND

Donald and Judith married in 1956. In 1962, Donald began working for Consolidated Telephone Company ("CTC") in Brainerd, Minnesota. Donald subsequently began accruing pension benefits under the CTC Defined Benefit Pension Plan ("the Plan").

In July 1991, Donald and Judith completed divorce proceedings. On July 29, 1991, a Minnesota state district court judge issued (1) an "Order for Judgment," (Debele Aff., Docket No. 33, Ex. A, at JA-000014-000028.), and (2) a Qualified Domestic Relations Order ("QDRO"),[1] (Compl., Docket No. 1, Ex. 1). The Order for Judgment awarded Judith spousal maintenance of $450 a week "until [Donald's] retirement, further Order of this court, or until such maintenance shall be terminated by statute." (Debele Aff., Docket No. 33, Ex. A, ¶ 6.) The Order for Judgment also stated that:

> It is appropriate that [Donald's] employment pension and retirement benefits in the . . . Plan, accumulated during the marriage, be allocated equally between the parties, pursuant to a [QDRO] under the Retirement Equity Act of 1984. There are not sufficient other asests [sic] to allocate to [Judith] to equitably divide the parties' marital estate and, threfore [sic], it is necessary to divide [Donald's] retirement benefits.

(*Id.*, ¶ 7.) The Order for Judgment added "[Donald] shall name [Judith] as a beneficiary on all term life insurance until such time as his maintenance obligation shall end and shall

---

[1] A QDRO is a domestic relations order that address the parties' respective rights to receive payments pursuant to an employer-sponsored benefit plan. *See* I.R.C. § 414(p)(1)(A).

further name [Judith] as a beneficiary on any death benefits available with the . . . Plan."
(*Id.*, ¶ 12.)

In accordance with the Order for Judgment, the QDRO issued on the same date provided further direction as to the distribution of Donald's pension benefits. The QDRO includes the following critical passages:

> In compliance with Section 401(a)(13) of the Internal Revenue Code, as amended, and Section 206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended, [Donald] hereby assigns fifty percent (50%) of his interest in [the Plan] to [Judith]. [Donald] shall have no remaining rights to the foregoing portion of [the Plan] herein assigned and [Judith] shall be treated as the distributee.
>
> * * *
>
> The plan administrator of [the Plan] shall assign to [Judith] the right to receive the sum of $1,677.55 per month from [the Plan].
>
> * * *
>
> With respect to the benefits assigned to [Judith], [Judith] shall be treated as a surviving spouse of [Donald] for purposes of Sections 401(a)(11) and 417 of the Internal Revenue Code for purposes of determining survivor benefits.

(Compl., Docket No. 1, Ex. 1, ¶¶ 2, 4, and 9.) The QDRO did not, however, restrict Donald's ability to choose a beneficiary for any death benefits available under the portion of the Plan that he retained.

On October 7, 1994, Donald submitted documents formally notifying the Plan that he intended to retire from CTC on December 31, 1994, and selecting the manner in which he would receive his pension benefits. (Debele Aff., Docket No. 33, Ex. A, at JA-000062.) In one of those documents, Donald was required to name beneficiaries for any death benefits available under his portion of the Plan. (*Id.*, at JA-000063.) Donald

named Appleton, his girlfriend, the primary beneficiary, and named his children as contingent beneficiaries.

Following Donald's retirement, Judith brought a motion in Minnesota state district court seeking to amend their divorce settlement. Judith contended that at the time of the earlier court proceedings, she and Donald had anticipated him working until April 5, 1999. Since the earlier Order for Judgment only required Donald to pay monthly spousal maintenance until he retired, those payments had ended sooner than she expected. Thus, Judith sought to extend the monthly maintenance payments until April 5, 1999.

On March 3, 1995, following a stipulation by the parties, the court entered an "Amended Judgment." (*See* Compl., Docket No. 1, Ex. 2.) The Amended Judgment stated "[Donald] shall pay to [Judith], commencing February 1, 1995, the sum of $450 per week until April 5, 1999, or until [Judith's] death, whichever occurs first." (*Id*., at ¶ 6.) In addition, this Amended Judgment again included several provisions addressing Donald's pension. The Amendment Judgment added that beginning on April 5, 1999, "and continuing until [Judith's] death, [Judith] shall be entitled to benefits payable pursuant to the Court's [QDRO] of July 29, 1991, or any amendment thereto which may be required by the [Plan], which benefits shall be payable to [Judith] in a sum of not less than $1,677.55 per month." (*Id*.) In another paragraph, the Amended Judgment further added:

> In the event that the [Plan] administrator requires an amendment of the Court's [QDRO] of July 29, 1991, the parties shall cooperate to obtain such amended QDRO as may be necessary to effect the intent of the parties to have assigned to [Judith] by [Donald] fifty (50%) percent of [Donald's] interest in [the Plan] as [Donald's] interests existed as of January 1, 1991,

but in any event resulting in monthly benefits payable to [Judith] in a sum of not less than $1,677.55.

(*Id.*, ¶ 7.) Finally, the Amended Judgment reaffirmed that "[Donald] shall name [Judith] as a beneficiary on all term life insurance until such time as his maintenance obligation shall end and shall further name [Judith] as a beneficiary on any death benefits available with [the Plan]." (*Id.*, ¶ 16.) The parties do not indicate that this Amended Judgment was followed by the issuing of a new QDRO or by amendments to the 1991 QDRO.

On September 23, 1998, Donald executed a will addressing the death benefits available under his pension. (Debele Aff., Docket No. 33, Ex. A, at JA-000126.) The will expressed his intent for 50% of the benefits to go to Appleton, 30% to Judith, and 20% to his children. The parties do not indicate, however, that Donald made any change to his formal beneficiary designation under the Plan, which, again, named Appleton the primary beneficiary.

In April 2004, the Plan merged into plaintiff Retirement & Security Program for Employees of the National Telecommunications Cooperative Association and its Member Systems ("R&S"). Following the merger, R&S required Donald to complete a new beneficiary designation form. On June 30, 2004, Donald designated Appleton as the primary beneficiary, and his children as contingent beneficiaries. (Compl., Docket No. 1, Ex. 3.)

Donald died on December 1, 2006. At the time of his death, R&S indicates that Donald was still owed thirty-six payments of $4,480 each, for a total death benefit of $161,280. (Compl., Docket No. 1, ¶ 15.) Both Judith and Appleton then asserted a right

to these remaining payments. In correspondence sent to the parties, the Plan administrator indicated that it was uncertain which claim should prevail. (*See* Debele Aff., Docket No. 33, Ex. A, JA-000209.) R&S specifically noted difficulties arising out of the application of the Employment Retirement Income Security Act of 1974 ("ERISA"), which includes extensive rules on the maintenance of pension plans. *See* 29 U.S.C. §§ 1001 *et seq.* R&S noted that it was not sufficiently clear which documents were properly controlling under ERISA, and in one letter specifically referred Appleton to the Eighth Circuit's decision in *Equitable Life Insurance Society v. Crysler*, 66 F.3d 944 (8th Cir. 1995). (Debele Aff., Docket No. 33, Ex. A, at JA-000209.) R&S did not reach a final decision on who was entitled to the benefits, and ultimately filed this interpleader action under § 1335, asking the Court to resolve defendants' dispute. Both Judith and Appleton now move for summary judgment as to their right to the remaining payments.

**ANALYSIS**

**I.  STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  RIGHT TO BENEFITS

Judith contends that this Court simply must apply unambiguous language from two court decrees. As noted above, both the Order for Judgment entered on July 29, 2001, and the Amended Judgment entered on March 3, 1995, stated that Donald "shall name [Judith] as a beneficiary on all term life insurance until such time as his maintenance obligation shall end and shall further name [Judith] as a beneficiary on any death benefits available with [the Plan]." (Debele Aff., Docket No. 33, Ex. 2, ¶ 12; Compl., Docket No. 1, Ex. 2, ¶ 16) Judith argues that this provision clearly required Donald to name her the beneficiary of any death benefits available through his pension, without reservation. Accordingly, Judith asks the Court to vacate Donald's designation of Appleton as the beneficiary, and award the entirety of the benefits to her.

Appleton disagrees, arguing that consideration of the Order for Judgment and Amended Judgment as a whole demonstrate that the reason for the beneficiary requirement was to ensure that Judith received all of her monthly maintenance payments even if Donald died before the schedule for those payments was completed. Appleton argues that Judith was never intended to receive more than half of Donald's pension as it was valued on January 1, 1991, and that guaranteeing her the death benefits from

Donald's remaining pension interests would have fallen well outside of that understanding.

As an initial matter, the Court agrees with Judith that the language in the 1991 Order for Judgment and the 1995 Amendment Judgment is clear: Donald was required to name Judith "a beneficiary on any death benefits available with the . . . Plan." In light of the clarity of this provision, there is no need to resort to any consideration of other provisions in the agreement or to extrinsic evidence of the parties' understandings. To the extent that other provisions express an intent that Judith merely receive half the total value of the pension, it is entirely conceivable that the parties intended to handle the question of death benefits separately, to enhance the total value of Judith's divorce settlement.[2] In short, the passages noted above are the only ones that specifically address Donald's death benefit designation, and their more generous treatment of that topic does not necessarily contradict the rest of the couple's agreement.

Ultimately, however, the Court concludes that it would be inappropriate to conclusively resolve this issue, or to determine which defendant is entitled to the disputed benefits, without further briefing from the parties. As noted above, R&S informed Appleton that its reservations as to who was owed the death benefits were based in part on the Eighth Circuit's discussion in *Crysler*. This reference was appropriate, as *Crysler* carefully addresses several subtle, relevant legal issues arising under ERISA. As explained in *Crysler*, and of particular relevance here, ERISA includes an "anti-alienation

---

[2] Indeed, Judith expressly testified that this was her understanding. (Debele Aff., Docket No. 33, Ex. A, at 27-28.)

provision," which limits the ability of pension recipients to assign their benefits to third parties.[3] That provision flatly states that "[e]ach pension plan [governed by ERISA] shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). As *Crysler* further explains, however, there is an exception to the anti-alienation provision which applies where pension interests are assigned pursuant to a QDRO. 66 F.3d at 948; *see* 29 U.S.C. § 1056(d)(3)(A). The question as to what divorce documents qualify as QDROs for these purposes is a nuanced topic that ERISA deals with at considerable length.[4] *See* 29 U.S.C. § 1056(d)(B)-(E).

Here, R&S asserts in its Complaint that the disputed pension plan is governed by ERISA. (Compl., Docket No. 1, ¶ 5.) Both defendants appear to agree, as they both repeat this assertion in their Statements of the Case. (*See* Docket No. 11, at 1; Docket No. 13, at 1.) R&S's Complaint also asserts that the question of which documents in this case qualify as QDROs is a critical consideration, (Compl., Docket No. 1, ¶¶ 11, 13), after having initially raised this issue in correspondence with the parties. (*See generally* Debele Aff., Docket No. 33, Ex. A, at JA-000200 to 215.)

Nonetheless, neither defendant's briefing on this motion includes any mention of ERISA, its detailed, relevant provisions governing QDROs, or – more generally – its

---

[3] *Crysler* clarifies that this provision applies to "employee pension benefit plans," *see* 29 U.S.C. § 1002(2), but does not apply to "employee welfare benefit plans," *see* § 1002(1). 66 F.3d at 947-48. Here, R&S has asserted that the plan at issue is an "employee pension benefit plan" under § 1002(2), which would presumptively require application of the anti-alienation provision. The parties have not disputed this characterization.

[4] More generally, *Crysler* also makes clear that the question of who is entitled to benefits under an ERISA-governed pension plan is a question of federal law, requiring consideration of numerous principles and presumptions developed in federal courts and supplied in ERISA's text. 66 F.3d at 947-50.

federal law principles governing benefit disputes. Rather, both defendants treat this dispute as merely a question of how to interpret the language from the 1991 Order for Judgment and the 1995 Amendment Judgment. As is evident from the law set forth above, however, this puts the cart before the horse. While the Court finds merit in Judith's view of those two orders, whether those documents are even relevant appears to depend on whether the 1991 Order for Judgment and 1995 Amendment Judgment were effective instruments for assigning pension benefits under ERISA. If they do not meet ERISA's QDRO standards – and Judith can identify no other qualifying document that awards her the disputed death benefits, and no other valid reason for why the anti-alienation provision should not apply in this case – then it would appear that Appleton, the designated plan beneficiary, would likely prevail. *See Crysler*, 66 F.3d at 947.

In light of both the significance and nuance of this question,[5] the Court finds it appropriate to withhold any judgment until the defendants have had a full and fair opportunity to address the relevant legal principles. Accordingly, both defendants' motions for summary judgment are denied without prejudice. Provided that attention to the governing law does not produce an informal resolution of this matter, the parties are directed to file additional motions for summary judgment within thirty days of this Order, with responses due twenty days later. Those motions should address (1) whether the Plan was indeed governed by ERISA; (2) whether the Plan was indeed an "employee pension benefit plan" under 29 U.S.C. § 1002(2), rather than an "employee welfare benefit plan"

---

[5] As the Circuit explained, ERISA introduced numerous "esoteric" legal issues that "le[ave] many practitioners bewildered." *Crysler*, 66 F.3d at 947.

under 29 U.S.C. § 1002(1); (3) whether ERISA's anti-alienation provision applies, *see* 29 U.S.C. § 1056(d)(1); (4) which, if any, of the critical documents in this case qualify under the exception to the anti-alienation provision carved out for QDROs, *see* 29 U.S.C. § 1056(d)(3); and (5) in light of these determinations – and any other factors deemed relevant by defendants – which defendant is entitled to the disputed benefits pursuant to the federal standards applicable to ERISA benefit disputes.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Johnson's Motion for Summary Judgment [Docket No. 22] is **DENIED without prejudice**.

2. Appleton's Motion for Summary Judgment [Docket No. 29] is **DENIED without prejudice**.

3. The parties are **ORDERED** to file renewed summary judgment motions within 30 days of the date of this Order addressing the impact of ERISA on this action. The parties are each entitled to file a Response within 20 days of the filing of these motions.

DATED: September 21, 2009             ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                     United States District Judge